ADVANCE–RUMELY THRESHER CO., Appellant, *v.*
TERPENING et al., Respondents.

(No. 4,217.)

(Submitted September 25, 1920. Decided November 17, 1920.)

[193 Pac. 752.]

*Contracts of Sales—Inconsistent Defenses—Breach of Warranty—Rescission—Estoppel—Election of Remedies—Consideration—Partial Failure—Evidence of Value—Failure of Proof—Use of Article After Discovery of Defect—Waiver—Voluntary Retaking and Cancellation—Evidence—Insufficiency.*

Contracts of Sale—Inconsistent Defenses—Rescission—Breach of Warranty—Election of Remedies.
   1. In an action to recover the purchase price of farm machinery in which defendant relied as defenses on rescission of the contract for failure of consideration and on breach of warranty, the court erred in refusing plaintiff's motion to compel defendant to elect on which of the two inconsistent defenses he would rely.
Pleadings—Inconsistent Defenses Permissible, When.
   2. Inconsistent defenses may be pleaded, provided they are not so far inconsistent as to be incompatible.
Contracts of Sale—Recovery of Purchase Price—Defenses—Remedies Available.
   3. A dissatisfied buyer may either confirm the contract and sue for damages for breach of warranty, or rescind and sue for recovery of partial payments made, but he cannot rescind and thereupon recover on the contract which has been rescinded and therefore is no longer in being.
Same—Rescission—Estoppel.
   4. Where a buyer of farm machinery continued in possession thereof and operated it for practically three seasons and up to the time the seller brought action to recover the purchase price, the former was estopped to claim rescission of the contract for failure of consideration.
Same—Personal Property—Breach of Warranty—Measure of Damages.
   5. The measure of damages for a breach of warranty on a sale of personal property is the difference in value between the article sold and what it should be according to the warranty.

Inconsistent defenses within rules of pleading, see note in Ann. Cas. 1917C, 704.

On purchaser's election to rescind for breach of warranty as affecting recovery against seller, see note in 27 L. R. A. (N. S.) 925.

On use as waiver of right to rescind for breach of warranty or non-compliance with contract, see note in 36 L. R. A. (N. S.) 467.

The question whether contract is entire or divisible as affecting rescission by seller is discussed in a note in 2 A. L. R. 665.

On the question of entirety or divisibility of contract for sale as affecting purchaser's right to rescind in part and affirm in part, see note in 2 A. L. R. 654.

Same—Divisibility—Consideration—Partial Failure—Value—Failure of Proof—Effect.

6. Where a contract of sale comprising a traction engine and other pieces of farm machinery provided that it was divisible and that failure of any one of them to fulfill the warranty accompanying it should not affect the liability of the buyer for any other, and the buyer in an action to recover their price defended on the ground of breach of warranty, his evidence showing defects in the engine only but failing to show what portion of the purchase price covered it, the jury was in no position, under the above rule, to award defendant damages suffered by reason of the alleged breach as to it.

Same—Breach of Warranty—Notice—Retention and Use After Discovery of Defect—Waiver.

7. Retention and use of farm machinery for more than two years after discovery of an alleged breach of warranty, without attempt on the part of the buyer to comply with the terms of the contract of sale requiring him to give immediate notice to the vendor of defects discovered, barred him from relying on the breach as a defense in an action to recover on the notes given in payment.

Same—Voluntary Retaking and Cancellation—Evidence—Insufficiency.

8. Defendant's allegation of a voluntary retaking of the machinery by the seller and a consequent cancellation of the contract, *held* not supported by evidence to the effect that its agent, on failure of defendant to meet payments as stipulated, removed a drive belt from one of the machines, which, however, was promptly returned on written demand of defendant on his promise that he would make payment as soon as possible.

*Appeal from District Court, Musselshell County; Charles L. Crum, Judge.*

ACTION by the Advance-Rumely Thresher Company against A. W. Terpening and another.

From a judgment for defendants and an order denying its motion for a new trial, the plaintiff appeals. Reversed and remanded.

*Mr. M. J. Lamb,* for Appellant, submitted a brief and argued the cause orally.

No appearance in behalf of Respondents.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

The complaint herein consists of two causes of action. The first alleges the execution and delivery,, for a valuable consideration, by A. W. Terpening and Gertie M. Terpening, his wife, of certain promissory notes, aggregating the sum of

$1,963.50, dated October 2, 1912; that the payment of said notes and interest was secured by the execution and delivery of a chattel mortgage on a certain traction engine with attachments, a gang-plow, breaker bottoms, and stubble bottoms, and all attachments and tools used therewith, and as additional security the execution and delivery of a mortgage on certain real estate. The second cause of action alleges the execution and delivery by the same makers, of certain promissory notes bearing date August 23, 1913, for a valuable consideration and aggregating $1,032, which notes were secured by a chattel mortgage on the tractor engine above mentioned and on a separator, wagon and other machinery and attachments, and also by a second mortgage on the real estate described in the first cause of action.

The answer admits all of the allegations of the complaint and admits that plaintiff would be entitled to the relief sought were it not for the facts alleged in nine separate special defenses and counterclaims therein set out. These allege the purchase of the machinery mortgaged from plaintiff's assignor by defendant A. W. Terpening, alleged to have been induced by knowingly false and fraudulent representations; total failure of consideration by reason thereof; breach of the warranties contained in the contracts of sale; the expenditure of $600 in an attempt to make the traction engine work; the payment of $1,200 on the purchase price notes described in the first cause of action, and $195 on those described in the second cause of action, and that the machinery purchased was wholly worthless. As a further separate defense defendants allege that the plaintiff took from their possession the separator and its attachments, and converted the same to its own use, and thereby abandoned its second cause of action. The answer closes with a prayer that plaintiff take nothing, and that defendants be awarded a decree of cancellation of the notes and mortgages, and judgment for the sum of $1,200.

Replying, the plaintiff admits the purchase of the property alleged in the answer, and denies all other allegations of the special defenses and counterclaims; sets up the signed order and agreement of purchase and contract of sale, showing the

warranties therein contained and the manner in which the purchaser shall proceed to give notice of a failure of any part of the machinery to fill the warranty, and that failure to so proceed shall constitute a waiver of the warranty and a full release of the company. The reply then alleges that defendants never gave notice of any defect or failure to fill the warranty as provided in the contract and order, or at all.

On the day of the trial the defendants were permitted to make numerous amendments to their answer, among which we find the following: "The defendants allege that upon the breach of the warranty above set forth, they notified the * * * company thereof, and thereupon its agents and employees at various times attempted to remedy said defects, but were unable to do so; that they thereupon abandoned all attempts to make the engine comply with the warranties, and repossessed themselves of said engine and separator, with all attachments, and rescinded the contract of sale; that the defendants complied with all the provisions of said warranty as to which it was their duty to do anything, and the failure, if any, on their part in this behalf was by reason of the facts above set forth, and the acts of the * * * company above alleged, waived by said company."

The action seems to have been tried throughout by both the court and counsel, on the theory that it was an action at law, and resulted in a verdict for $1 in favor of the defendants on which judgment was entered for $1 and costs. The plaintiff has appealed from the judgment and an order denying its motion for a new trial.

On the trial the plaintiff introduced the notes and mortgages and evidence of the devolution of title thereto from the Rumley Products Company to itself, and rested.

1. At the opening of the defense, counsel for plaintiff moved [1] the court to compel the defendants to elect on which of their several defenses they would rely, which motion was denied, the court stating that the ruling was "with the understanding that there isn't any question of rescission in the case." The court thereupon announced: "The position of the defendants is two defenses. One is that there was no con-

sideration at all, that the machinery was worthless; and the
other is that there was a breach of warranty, and that they
were entitled to recover the amount of money expended in
trying to get the thing to work.''

While it is difficult to ascertain just what position the de-
fendants take in their nine separate defenses, it seems clear
that they rely, first, on a rescission of, or the right to rescind,
the contract and have the money which they had paid on the
contract returned to them, by reason of the alleged failure of
consideration; and, second, on their right to recover damages
for a breach of warranty, and this is indicated even in the
statement of the court in narrowing the issues, as above quoted.
This being conceded, the court should have granted the motion
and compelled the defendants to elect on which of the two
defenses they would rely.

Although .it is permissible, under our procedure, to set forth
[2, 3]  inconsistent defenses, they must not be so inconsistent
as to be incompatible.  (*Johnson* v. *Butte Copper Co.,* 41
Mont. 158, 48 L. R. A. (n. s.) 938, 108 Pac. 1057; *Day* v.
*Kelly,* 50 Mont. 306, 146 Pac. 930; *Chenoweth* v. *Great North-
ern Ry. Co.,* 50 Mont. 481, 148 Pac. 330.)  The buyer may
affirm the contract and sue for damages for the breach of war-
ranty, or he may rescind the contract and sue for a recovery
of the money paid; but he cannot insist that the contract has
been rescinded and yet recover on the contract.  (30 Am. &
Eng. Ency. of Law, 2d ed., 199; *Abraham Bros.* v. *Browder,*
114 Ala. 287, 21 South. 818; *Osborne & Co.* v. *Poindexter*
(Tex. Civ. App.), 34 S. W. 299; *Houser & Haines Co.* v.
*McKay,* 53 Wash. 337, 27 L. R. A. (n. s.) 925, 101 Pac. 894;
*Doornbos* v. *Thomas,* 50 Mont. 370, 147 Pac. 277.)  As was said
by this court in the *Doornbos Case:* ''When the plaintiff, after
a fair trial of the drill, discovered the defects in it, he had
these options: (1) To rescind the contract if the facts justified
it and recover the purchase price; * * * (2) to retain
the drill and bring his action for damages for a breach of the
warranty; or perhaps (3) to bring his action for the fraud
practiced upon him. * * * If the purchaser elects to exer-
cise the first option, he is bound by his election, and cannot

thereafter sue for a breach of the warranty. The measure of damages is the purchase price [citing cases]. The rule as stated in these cases prevails in most jurisdictions, even though title has passed to the purchaser, and the contract does not specifically stipulate for a rescission. In this jurisdiction the right of the purchaser to rescind does not exist if title has passed to him, unless the warranty was intended to operate as a condition. (Rev. Codes, sec. 5121.) Subject to this limitation, the rule as stated above must be correct, for the reason that by exercising his option to rescind the purchaser has elected to extinguish the contract (Rev. Codes, sec. 5062), and by doing so has dissolved entirely his relation with the seller created by it, thus incidentally adjusting also all the rights growing out of it. In *Abraham Bros.* v. *Browder, supra,* the rule is stated thus: 'There must be a subsisting contract to support an action for a breach of warranty. If the facts justify it, a buyer may rescind a contract and sue for the purchase money paid; or he may sue and recover damages for a fraud practiced upon him; or he may affirm the contract and maintain an action for breach of warranty. He cannot insist that a contract has been rescinded, and yet recover on the contract.' ''

However, as defendants continued in possession and operated [4] the machinery throughout the fall of 1912 and the seasons of 1913 and 1914, and in fact up to the time of the commencement of this action when the property was taken into the custody of the sheriff, there can be no question of a rescission of the contract, and they must defeat the plaintiff's case, if at all, on the theory of a breach of warranty.

2. Plaintiff's fourth, fifth, sixth and seventh assignments of error are directed to the insufficiency of the evidence to warrant the verdict, and will be considered together.

As to the notes and mortgages set forth in the second cause of action, aggregating the principal sum of $1,032 representing the purchase price of the separator and attachments, purchased at a different time and under a separate contract from the other machinery, no evidence whatever was offered by the defendants to support their allegations of either a failure of

consideration or a breach of warranty, and the defendants' liability on these notes remained, therefore, unquestioned, and the jury was instructed that as to these notes a finding in favor of the plaintiff must be made.

As a defense to the notes and mortgages set forth in the [5, 6] first cause of action, the only evidence introduced tending to show a breach of warranty was directed to alleged defects in the traction engine, particularly the working of the clutch and the consequent breaking of "eyebolts," This contract of purchase included the traction engine, plows and plowshares. The contract was, by its terms, made divisible as follows: "This order is divisible as to each machine and the failure of any separate machine or attachment to fulfill the warranty shall not affect the liability of the purchaser for any other machine or attachment hereby ordered."

"Whether or not the contract is entire or divisible depends on the intention of the parties. The intention is to be ascertained from the language used, the subject matter of the contract, and from a consideration of the circumstances." (2 Elliott on Contracts, 1543.)

There was no attempt to show what portion of the purchase price covered the tractor and what portion the plows and plowshares. Assuming that the evidence shows a failure of consideration or a breach of warranty as to the engine, it can be no more than a partial failure of consideration for the notes or a breach of warranty as to the engine alone. In the absence of some proof as to the value of the engine, the jury was in no position to determine the damage the defendants suffered by reason of the breach as to the engine, even though they believed it was without value.

In *J. I. Case T. M. Co.* v. *Scott*, 96 Wash. 566, 165 Pac. 485, the supreme court of Washington said: "Under contract of sale of a plow and engine, providing that the order is divisible as to each machine and attachment, and that failure of a separate machine to fill the warranty shall not affect buyer's liability for any other, the plow fulfilling the warranty, * * * the buyer must pay therefor, notwithstanding breach

of warranty as to the engine." (See, also, *Aultman & Taylor Co.* v. *Lawson*, 100 Iowa, 569, 69 N. W. 865; *Nichols & Shepard Co.* v. *Wiedman*, 72 Minn. 344, 75 N. W. 208, 76 N. W. 41; *Mulcahy* v. *Diendonne*, 103 Minn. 352, 115 N. W. 636.)

Under like circumstances, the court of civil appeals of Texas said: "Under the facts of the case, there was not a total breach of the warranty, for much of the machinery was not defective; and, such being the case, if the defendant desired to recover the damages sustained by reason of a partial breach, he should have proved such items of damages, which was not done." (*Gilbert* v. *Gossard* (Tex. Civ. App.), 73 S. W. 989; *Moline Plow Co.* v. *Wilson* (Okl.), 176 Pac. 970.)

Inasmuch as the defendants offered no evidence of any defect in the plows and plowshares, it is evident that the notes and mortgages set out in the first cause of action were given for some value; what that value was, taking the defendants' statement that the engine was worthless as true, does not appear. "The measure of damages for a breach of warranty on a sale of personal property is the difference in value between the articles sold and what it should be according to the warranty." (Rev. Codes, secs. 6061, 6062; *Hogan* v. *Shuart*, 11 Mont. 498, 28 Pac. 969; *Lander* v. *Sheehan*, 32 Mont. 25, 79 Pac. 406.)

But, aside from these considerations, we are of the opinion [7] that the defendants could not, under the provisions of their contract and the proof adduced in the case, successfully defend against either cause of action alleged in the complaint. Their contract with the company provides: "If, inside of five days from the time of its first use, it shall fail in any respect to fill the warranty, written notice shall be given immediately by the purchaser to the vendor at its home office * * * by registered mail, * * * and failure to give the notice as provided, or the keeping and using of the machinery after five days allowed as provided, * * * shall be a waiver of the warranty and a full release of the warrantor without in any wise affecting the liability of the purchaser for the price of the machinery or the liability to pay the notes given therefor."

The testimony of the defendant A. W. Terpening, which it is contended constituted a waiver of compliance with the provisions quoted, is to the effect that on the delivery of the machinery the clutch on the engine did not work properly and as a consequence the eyebolt broke; that he thereupon went to the manager of the branch house at Billings; stated that "this clutch is breaking on us, and we want it fixed some way," and was told that a man would be sent out to fix it; that the clutch continued to break the eyebolts, and finally, when they got the eyebolts to hold, the spider broke. The witness then states that he had a conversation with the branch manager, when the first note came due, about December 1, 1912, or two months after the delivery of the engine and after he had plowed approximately fifty acres of land with it, when, he states, he told the branch manager that they would have to make it work better or he would not keep it, and that the branch manager promised to make it run or put in another. The record, however, shows that the defendants, notwithstanding the fact that they claim that the engine was never put in shape to work properly, retained possession thereof, and continued to use it throughout the seasons of 1913 and 1914, and never at any time notified the head office of the failure of the persons sent to correct the difficulty, to make the engine fill the warranty. The record further discloses that Terpening was himself a salesman of the company, and had sold many such engines under like contracts and must have had actual notice of the provisions of such a contract and of what steps he must take in order to avail himself of a right of action, or defense on breach of warranty. In this connection the contract of sale specifically provided: "That if the party who is sent by the vendor upon such notice to remedy the difficulty cannot make it fill the warranty, the purchaser shall give *immediate notice* to the vendor, by registered mail or prepaid telegram sent to its home office at La Porte, Indiana." And again: "It is agreed that parties holding commission contracts, salesmen, mechanical experts or *branch managers,* have no authority to make contracts of sale or to bind

the vendor or to *modify,* or enlarge or *waive* any of the terms thereof.''

If we should hold that, notwithstanding such agreement, the action of the branch manager amounted to a waiver of the condition requiring notice in the first instance, we still have nothing to show a compliance with the requirement of a second notice, and nothing in the testimony to excuse the giving thereof.

The remarks of this court in the case of *Best Mfg. Co.* v. *Hutton,* 49 Mont. 78, 141 Pac. 653, are pertinent here: ''It is not a function of the courts to make contracts for private parties, but when private parties freely contract with each other and the terms of their contracts are not unlawful, it is the duty of courts to enforce them. If the defendant expected to stand upon the warranties, his course under the contract was to ascertain whether the outfit could meet the warranties before putting it to other uses, or at least not to use it after ascertaining that it was a failure.  *  *  *  Under this contract, use of the outfit for twenty days constituted not merely a waiver, but an acceptance and a waiver; if the acceptance had not been made to also constitute a waiver, it would still remain an acceptance. A breach of warranty which has not been waived may be pleaded by way of counterclaim to an action on the purchase price, but it cannot be relied on as a defense, after acceptance and retention of the purchaser, with knowledge of the breach.'' This seems to be the generally accepted rule. (*Minnesota Threshing Machine Co.* v. *Lincoln,* 4 N. D. 410, 61 N. W. 145; *Garr-Scott Co.* v. *Green,* 6 N. D. 48, 68 N. W. 318; *J. I. Case Co.* v. *Hall,* 32 Tex. Civ. App. 214, 73 S. W. 835; *Aultman-Taylor Co.* v. *Weir,* 67 Kan. 674, 74 Pac. 227; *Larson* v. *Minnesota Threshing Machine Co.,* 92 Minn. 62, 99 N. W. 623; *J. I. Case Co.* v. *Mattingly,* 142 Ky. 581, 134 S. W. 1131; *Avery Planter Co.* v. *Peck,* 86 Minn. 40, 89 N. W. 1123; *Heagney* v. *J. I. Case Co.,* 4 Neb. (Unof.) 745, 96 N. W. 175.)

Having retained and used the engine for more than two years after discovery of the alleged breach of warranty—in fact up to the very time of the commencement of this action—

without attempting to comply with the terms of their contract regarding notice, the defendants are in no position to assert a breach, as a matter of defense, to the recovery on the notes and foreclosure of the mortgages.

Defendants allege a voluntary retaking of the machinery [8] by the company and a consequent cancellation of the contract, but these allegations are not supported by the proof. The record discloses that, the defendants being in default on one or more of the installment notes, a collector for the company removed the drive belt from the separator, but this was promptly returned on the written demand of defendant A. W. Terpening, coupled with the statement that he would pay the amount due as soon as possible. The only other taking of the property, as disclosed by the record, was by the sheriff, after the commencement of this action and the placing in his hands of the chattel mortgages for foreclosure.

While the defendants allege that they paid out $600 in attempts to make the engine do the work, defendant A. W. Terpening testified generally that he expended, during the three periods he was operating the engine, $1,200 to $1,400; on cross-examination he recalled various small sums he had paid out for repairs, but made no attempt to fix the time of such payments, and we find nothing in the contract warranting a recovery for moneys expended in replacing broken or wornout parts of the machinery.

3. The motion for a new trial was submitted to the successor of the judge who tried the case, but upon the cold record the motion should have been sustained and a new trial granted.

The judgment of the district court is reversed and the cause remanded, with direction to said court to grant a new trial.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY and ASSOCIATE JUSTICES HOLLOWAY, HURLY and COOPER concur.