**MONTANA HOMES LLC, a Montana limited liability company, Plaintiff—Appellant,**

v.

**BNSF RAILWAY COMPANY, a Delaware corporation, Defendant—Appellee.**

No. 07–35105.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 2, 2008.

Filed July 22, 2008.

Henry F. Brandenstein, Jr., Venable LLP, Vienna, VA, Karl Knuchel, Law Offices of Karl Knuchel, P.C., Livingston, MT, for Plaintiff–Appellant.

John C. Berghoff, Jr., Mayer Brown, LLP, Chicago, IL, Dennis Nettiksimmons, Hedger Friend & Roberts PLLC, Billings, MT, for Defendant–Appellee.

Before: CLIFTON and CALLAHAN, Circuit Judges, and WRIGHT, District Judge.*

MEMORANDUM **

Montana Homes, LLC ("Montana Homes") sued Burlington Northern Santa Fe Railway Company ("BNSF") for clean-up costs for contamination leaked from the Livingston maintenance shop complex into surrounding properties.[1] On July 22, 2004, the attorney for Montana Homes sent a letter to BNSF stating "we have an agreement in principle to settle this case for $512,500 payment by your client and conveyance of the subject property by my client." The parties circulated a settlement agreement calling for settlement of claims for $152,500, and conveyance of Montana Homes' property for $360,000. The parties notified the district court several times that this case was settled and the parties would file a stipulated dismissal with the court. After several delays in finalizing the settlement agreement, the manager of Montana Homes decided he wanted more money. On BNSF's motion to enforce the settlement agreement the district court granted the motion in part, enforcing the release of claims portion but refusing to enforce the conveyance of Montana Homes' property on Statute of Frauds grounds. We affirm.

This court reviews a district court's decision regarding the enforceability of a settlement agreement for abuse of discretion and will reverse only if the court based its decision on an error of law or clearly erroneous findings of fact. *Maynard v. City of San Jose*, 37 F.3d 1396, 1401 (9th Cir. 1994). Federal courts interpret settlement agreements according to the principles of contract law in the state where the action arose. *See Northwest Acceptance Corp. v. Lynnwood Equip., Inc.*, 841 F.2d 918, 920 (9th Cir.1988). A district court's interpretation of state law is reviewed de novo. *Perfumebay.com v. EBAY, Inc.*, 506 F.3d 1165, 1173 (9th Cir.2007).

## I. The parties entered into an enforceable agreement to settle the case.

Under Montana law, a settlement "agreement is binding if made by an unconditional offer, and accepted unconditionally." *Hetherington v. Ford Motor Co.*, 257 Mont. 395, 849 P.2d 1039, 1042 (1993). Montana follows the Restatement (Second) of Contracts, § 21, and the Montana Supreme Court has held that, "[a] party's latent intention not to be bound does not prevent the formation of a binding contract. Such a condition, that it will not be effective until signed, must be part of the agreement between the parties." *Id.* In addition, "[u]nder *Hetherington*, a party to a settlement agreement is bound if he or she has manifested assent to the agreement's terms and has not manifested an intent not to be bound by that assent." *Lockhead v. Weinstein*, 319 Mont. 62, 81 P.3d 1284, 1287 (2003).

* This case was argued before Ferguson and Callahan, Circuit Judges and the Hon. Otis D. Wright II, District Judge for the Central District of California, sitting by designation. Following Judge Ferguson's death, Judge Clifton was drawn by lot to replace Judge Ferguson. Judge Clifton has read the briefs, reviewed the record, and listened to the oral argument.

** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

1. The parties are familiar with the underlying facts, therefore we do not recount them except as necessary to the disposition of this case.

■ The district court did not clearly err in making its factual finding that Montana Homes unconditionally accepted the offer to settle the case. Montana Homes never placed any conditions on the acceptance of the offer. As a result, this case is distinguishable from *Patton v. Madison County*, 265 Mont. 362, 877 P.2d 993, 995–96 (1994), where counsel expressly stated that acceptance of the settlement was "conditioned upon the approval of the appropriate settlement documents and covenants by the parties of record and their attorneys."

Montana Homes also claims that its attorney lacked the authority to bind it. However, "[i]t is settled that a principal who neglects promptly to disavow an act of his agent, by which the latter has transcended his authority, makes the act his own; he is bound to disavow it the first moment the fact comes to his knowledge." *McLaren Gold Mines Co. v. Morton*, 124 Mont. 382, 224 P.2d 975, 982 (1950). Montana Homes never introduced any evidence that it sought to disavow the actions of its attorney although it had several months' notice concerning the settlement of the case. Therefore, the district court properly found that the attorney's actions bound Montana Homes to the settlement of the case.

## II. The district court properly found that the land sale was severable from the Settlement Agreement.

"Whether or not a contract is severable is a matter of intention, and the intention is determined from the language used and the subject matter." *Purdin v. Westwood Ranch & Livestock Co.*, 67 Mont. 553, 216 P. 326, 327 (1923); *see also Smith v. Fergus County*, 98 Mont. 377, 39 P.2d 193, 196 (1934) (discussing intent); *Advance–Rumely Thresher Co. v. Terpening*, 58 Mont. 507, 193 P. 752, 754 (1920) (noting intent "is to be ascertained from the language used, the subject-matter of the contract, and from a consideration of the circumstances.").

■ In this case, the settlement agreement called for separate payments of $152,500 for the release of claims, and $360,000 for the property. The district court concluded that clause 2, along with the severability clause, manifested an intent to make the contract severable. This finding was not clearly erroneous. *Maynard*, 37 F.3d at 1401.

Montana Homes' reliance on this court's discussion of California law in *Texaco v. Ponsoldt*, 939 F.2d 794, 796–97, 801 (9th Cir.1991), is misplaced because the contract dispute settled in that case was a land sale contract. As a result, the promise to convey the land was not "ancillary" to the settlement of claims where Texaco was attempting to force conveyance of the land as the settlement. *Id.* at 801. In this case, the claims that were settled relate to environmental pollution of property, not a land sale contract. Without an express statement that the settlement was explicitly conditioned on the land sale, or some other manifestation of Montana Homes' intent that the land transfer be the main reason for settling the case, any unstated purposes behind the settlement were "latent intentions" that were never part of the settlement agreement. *Hetherington*, 849 P.2d at 1042. Therefore, the district court did not err in interpreting Montana state law concerning severability or finding that the parties intended for the settlement agreement to be severable.

## CONCLUSION

Under Montana law, Montana Homes agreed to the settlement agreement by unconditionally stating its acceptance of BNSF's settlement offer. The district court did not err under Montana law in

concluding that the land sale was severable from the release of claims in light of the separate consideration for the sale of land, the separate purpose of settling the contamination claims, and the express severability of the contract.

**AFFIRMED.**

---

\* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.